[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a marital dissolution action brought in February 1999 by John Shea, age 43, a high school graduate. The defendant, Nancy C. Shea, is also 43 and a high school graduate. She filed a cross-complaint. Both parties have appeared by counsel. After a special masters' pretrial on February 24, 2000, the case was heard by the court on March 28, 2000.
Based on the evidence, the court makes the following findings:
The plaintiff and the defendant, whose maiden name is Cavanna, were married in Lebanon, Connecticut on April 24, 1981;
The plaintiff has resided in Connecticut for at least one year prior to the filing of the complaint;
The parties have four minor children born of the marriage: Jason Thomas Shea and James Michael Shea, born August 4, 1982; Paul Dominic Shea, born August 20, 1984; and Katie Lynn Shea born September 10, 1987;
The defendant has not given birth to any other children since the date of the marriage;
Neither of the parties nor the children receive assistance from the State of Connecticut or from any of its towns or municipalities
The parties met in 1977 when they were 19 years' old. He was a construction worker. She was a secretary at the University of Connecticut. They married in 1981. Twin sons CT Page 4936 were born in 1982 after which, by mutual agreement, the defendant became a full-time homemaker. Two more children followed in 1984 and 1987. They purchased a home in Windham in this judicial district in 1983. They agree its fair market value is $98,500.
Eleven years ago, the plaintiff went to work for a tool repair company in Glastonbury that is a subsidiary of a precision tool business owned by the defendant's parents. He is a tool repair technician earning $18.75 hourly and $40,000 annually. The defendant returned to work in late 1996. She is an administrative assistant to the assistant superintendent of schools in Windham earning $27,700 annually. The parties have two mortgages on their home which is owned jointly. The mortgages total about $60,500. They have significant credit card debt totaling some $13,000 although the plaintiff has obtained a release of liability from some creditors on the basis that his wife was the obligor and he had only a courtesy card. There is an unpaid orthodontist bill in the amount of $750.
Several years ago, the plaintiff had an extramarital affair that lasted about three months. During this period, he lived apart from the family. At this time and until about three years ago, he admits to excessive use of alcohol. He stopped drinking for two years and now drinks occasionally. The parties reconciled after the plaintiff's affair, but never really got along well thereafter. The demands of raising four children weighed heavily and primarily upon the defendant. For nine years, the plaintiff gave about $400 weekly to the defendant to pay the household expenses and to feed and clothe the family. He retained about $150 weekly for his own purposes. Friday nights and Sundays were reserved for the plaintiff for his recreation and entertainment. The defendant resented this situation and the fact that she was unable to pay the monthly bills without using credit cards to finance necessaries for herself, the children and the plaintiff. On two occasions, the defendant physically assaulted the plaintiff after she became angry over his use of alcohol.
The situation at home became more stressful when the parties' son, Paul, was injured in a football accident in 1998. Surgery has left him with a permanent partial injury to his leg for which the parties have sought damages from the physician involved. Paul requires transportation to and from school and regular therapy sessions. The parties are very concerned about CT Page 4937 Paul and the plaintiff has assumed special parenting responsibilities for him.
The defendant indicated to the plaintiff in 1997 that she wanted a divorce. He brought this action in early 1999. The parties resided together in the family residence until March 11, 2000 (after the pretrial) when the plaintiff left. In the weeks since then he has arranged to lease an apartment for himself and his son Paul at a monthly cost of about $800. He also purchased a jeep utility vehicle for $19,000 resulting in a monthly payment of $396. He incurred credit card debt in the amount of $2400 for new furniture for the apartment.
The parties are at odds over the amount of child support to be paid, alimony, a property settlement and a division of the existing debt. They agree on joint custody of the children and where they should reside. At the trial, it appeared the parties reached an agreement on the issue of health insurance for themselves and the children.
After the testimony, the court concludes that the marriage has broken down irretrievably and that the plaintiff is primarily responsible for the breakdown due to his dependence upon alcohol for several years and its effect on his relationship with the defendant. There is no reasonable likelihood of reconciliation. The marriage should be dissolved, The court being mindful of the provisions of Chapter 815j of the General Statutess, particularly §§ 46b-81, 46b-82 and 46b-84 and relevant case law, finds the following orders to be fair and equitable:
1. The marriage of the parties is dissolved on the ground of irretrievable breakdown.
2. The parties shall have joint custody of the minor children. The physical residence of Paul shall be with the plaintiff; the physical residence of James, Jason, and Katie shall be with the defendant. Each parent shall have reasonable access to all children. Paul shall have a Thursday overnight with the defendant. Each parent shall have Paul and Katie together on alternate weekends. Both shall consider the childrens' best interests in the access arrangement.
3. The plaintiff shall pay periodic alimony to the defendant in the amount of $125 per week for a period of ten CT Page 4938 years from the date of the judgment or until she remarries, either party dies, or she cohabits with an unrelated person as defined in General Statutess 46b-86 (b), whichever occurs first
4. The plaintiff shall pay to the defendant the sum of $207.46 weekly to the defendant for the support of James, Jason and Katie. The defendant shall pay to the plaintiff the sum of $87.72 for the support of Paul or a net weekly amount of $120 to the defendant pursuant to the support guidelines. After August 4, 2000 when Jason and James reach 18, the net amount payable to the defendant will be reduced to $29 weekly pursuant to the guidelines. The amounts shall be paid by immediate wage execution.
The plaintiff and the defendant shall each be entitled to two children for the purpose of dependency exemptions. The plaintiff shall have James and Paul. The defendant shall have Jason and Katie. Once the plaintiff may no longer claim Paul as an exemption, the parties shall alternate Katie as a dependency exemption with the first year being claimed by the defendant.
5. By way of property settlement, the plaintiff shall quit claim his interest in the 108 Plains Road premises to the defendant subject to the existing first and second mortgages which the defendant shall pay and save the plaintiff harmless from any claims arising therefrom.
When the youngest child is 18 or graduates from high school, whichever is later, or when the plaintiff remarries or cohabits with an unrelated person for more than sixty days, or when she no longer uses the home as her residence, or when she refinances or sells, then she shall, within sixty days of such event, pay the sum of $15,000 to the plaintiff. This sum, at the request of the plaintiff, shall be secured by a note and mortgage for that amount, without interest, and recorded in the Windham Land Records.
6. The defendant shall continue to cover the minor children with health insurance as available through her place of employment at reasonable cost, provided however, the plaintiff shall pay over to the defendant the sum he receives each month from his employer for the cost of the insurance. The provisions of General Statutes § 46b-84 (e) shall apply.
As long as the parties have at least one minor child living CT Page 4939 with him/her they will share equally the unreimbursed medical, dental, orthodontic, ophthalmologic, psychological, and pharmaceutical expenses of the minor children. When there remains only one minor child, then the parties shall share the aforesaid health expenses of said child according to the support guideline worksheet.
7. The parties shall be jointly liable for the payment of the following debts as of the date of judgment: Fleet Bank — $5308.67; Sears — $1374.93; First Card — $6826.61; Filenes — $657.54; Dr. Cain — $750.
8. The plaintiff and the defendant shall both name the children as irrevocable beneficiaries on their existing life insurance policies. They shall be co-guardians of any funds due to their son Paul as a result of his injury.
9. The plaintiff shall retain his 1996 Jeep Grand Cherokee and he shall pay the loan, taxes and insurance thereon and hold the defendant harmless therefrom. The defendant shall retain the 1997 Ford Escort and she shall pay the loan, taxes and insurance therefrom and hold the plaintiff harmless therefrom. The parties shall transfer their 1988 Ford Thunderbird to their son, James. The plaintiff shall transfer his 1988 Jeep to their son, Jason.
With the exception of the specific orders to the contrary herein, each party shall be entitled to the ownership of the assets and shall be responsible for the payment of the liabilities shown on his or her proposed orders or financial affidavits and shall hold the others harmless from any liabilities set forth therein or any liabilities in connection with the assets.
10. The court shall retain jurisdiction to enter such orders as may be necessary in order to effectuate the provisions of the judgment.
The plaintiff shall prepare the judgment file.
POTTER, JUDGE. CT Page 4940